**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| CEDAR LANE TECHNOLOGIES, INC., | Case No. 7:25-cv-271-DC-DTG |
| Plaintiff, | PATENT CASE |
| v. | |
| CANVA US, INC., | |
| Defendant. | |

## DEFENDANT CANVA US, INC.'S MOTION TO DISMISS

## I.    INTRODUCTION

Defendant Canva US, Inc. ("Canva") respectfully requests that Plaintiff Cedar Lane Technologies Inc.'s ("Cedar Lane") Complaint be dismissed for either of two independent reasons: (1) the Complaint fails to state a plausible claim for patent infringement, and (2) the asserted patent is invalid under 35 U.S.C. § 101.

First, Cedar Lane alleges no facts to support its contention that Canva practices numerous limitations of the asserted patent's claim 26, which is the only claim addressed in the Complaint. Specifically, Cedar Lane fails to adequately allege that Canva practices multiple material claim elements, including: an "interactive audio publication," a "distribution system" that "distribute[s] the generated audio publication to the subscriber for interactive presentation," "custom audio publication templates," "source audio publications," or a "subscriber portal" with a "subscriber to the audio publication." ECF No. 1-1 ('485 Patent) at 54:27–29, 54:31–42, 54:45–55. The Complaint relies on screenshots of Canva's product and conclusory allegations that merely parrot the claim language. A complaint that cherry-picks a few limitations that may be infringed and then simply handwaves at the rest does not state a plausible claim for infringement. What's more, Cedar Lane's allegations regarding the accused feature's practice of the asserted claim conflict with its arguments and amendments during prosecution of the asserted patent. A patent holder cannot narrow its claim scope in order to gain allowance and then recapture that disclaimed scope in an assertion of infringement.

Second, the asserted claim is invalid under 35 U.S.C. § 101. The patent purports to claim the abstract idea of identifying and curating information for individual recipients, whether it be a collection of print articles or selected songs. Further, the claims do not disclose any technical details as to how to achieve this result, but rather just recite using a generic computer to conduct

the abstract idea. Moreover, the claims do not add an inventive concept to the abstract idea; they do nothing but recite the abstract idea itself.

For both of these reasons, Cedar Lane's Complaint fails, and Canva requests that this Court dismiss the Complaint with prejudice.

## II.     FACTUAL BACKGROUND

There are minimal allegations in the Complaint regarding Plaintiff Cedar Lane. The Complaint alleges only that Cedar Lane "is a corporation organized and existing under the laws of Canada that maintains its principal place of business" at an address in British Columbia, and that it is the assignee of all right, title, and interest in the asserted patent. ECF No. 1 ("Compl.") ¶¶ 2, 8. Cedar Lane is apparently a non-practicing entity, which sued at least ten other defendants for patent infringement this year alone, including two other cases involving the patent asserted against Canva.[1]

The claim chart attached to the Complaint alleges that Canva is a software company providing a visual communications platform for creating "presentations . . . documents, videos, websites, infographics and more." *See* ECF No. 1-2 ("Claim Chart") at 7.[2] Cedar Lane alleges that one of the functionalities that Canva offers is a text-to-speech feature that allows users to

---

[1] *Cedar Lane Techs. Inc. v. Synthesia Ltd*, No. 2:25-cv-00824-JRG-RSP (E.D. Tex. filed Aug. 20, 2025) (asserting the '485 patent); *Cedar Lane Techs. Inc. v. Neosapience, Inc.*, No. 2:25-cv-00823-JRG-RSP (E.D. Tex. filed Aug. 20, 2025) (asserting the '485 patent); *Cedar Lane Techs. Inc. v. Hilltop Sec. Inc.*, No. 3:25-cv-00483-S (N.D. Tex. filed Feb. 25, 2025); *Cedar Lane Techs. Inc. v. FMR LLC*, No. 2:25-cv-00232-JRG-RSP (E.D. Tex., filed Feb. 25, 2025); *Cedar Lane Techs. Inc. v. Cobra Trading, Inc.*, No. 2:25-cv-00230-JRG-RSP (E.D. Tex. filed Feb. 24, 2025); *Cedar Lane Techs. Inc. v. The Charles Schwab Corp.*, No. 2:25-cv-00233 (E.D. Tex. filed Feb. 24, 2025); *Cedar Lane Techs. Inc. v. Doo Tech. Sing. Pte. Ltd.*, No. 2:25-cv-00231-JRG-RSP (E.D. Tex. filed Feb. 24, 2025); *Cedar Lane Techs. Inc. v. WideOpenWest, Inc.*, No. 1:25-cv-00327-RMR-SBP (D. Colo. filed Jan. 30, 2025); *Cedar Lane Techs. Inc. v. AsusTek Comput. Inc.*, No. 2:25-cv-00088-JRG-RSP (E.D. Tex. filed Jan. 30, 2025); *Cedar Lane Techs. Inc. v. Alterna Sec., Inc.*, No. 7:25-cv-00012-DC-DTG (W.D. Tex. filed Jan. 14, 2025).

[2] The allegations about Canva's products are accepted as true for purposes of this motion only.

2

"[c]hoose from a variety of voices in multiple accents to match your message, then add it to any Canva video, design, or presentation." Claim Chart at 4. Cedar Lane alleges, without support, that this text-to-speech tool "enabl[es] users to generate interactive audio publications (ads, podcasts, promotional videos, audiobooks)," Claim Chart at 2, but does not explain how such ads, podcasts, promotional videos, or audiobooks are "interactive." Per Cedar Lane's allegations, the text-to-speech tool generates voiceovers based on a set of preexisting audio options offered by Canva. *See, e.g.*, Claim Chart at 16 (showing the user selecting a language and voice for the desired voiceover). Cedar Lane further alleges that users have the ability to subscribe to Canva, Claim Chart at 8, 21, 24, though it notably does not allege a "subscriber to the audio publication" as required by the claim, *id.* at 8.

The asserted patent acknowledges as prior art "text-to-speech (TTS) technology to convert text-based content into audio," and highlights the shortcoming in the prior art of a lack of "audio content interactivity." '485 Patent at 2:9–15. Nevertheless, the Complaint alleges that Canva directly infringes and induces others to infringe U.S. Patent No. 8,438,485 (the "'485 Patent") by offering a text-to-speech tool, and without plausibly alleging an audio content interactivity. Compl. ¶ 9. As explained in its background section, the '485 Patent seeks to "provide busy multi-tasking individuals" with "interactive audio publication system[s]" that could be "utilized fully [and] effectively while driving, exercising, or otherwise multitasking." '485 Patentat 1:26–33; 1:62–65. The '485 Patent highlights the importance of audio publication interactivity beyond "changing the channel" or "using a media player's controls" to perform "standard navigation functions (e.g., next/previous track, seek forward/backward, etc.)," reasoning that utilizing traditional methods of audio publication control is "cumbersome and even dangerous when performing other activities, such as driving," and fails to provide "the

elderly and [] individuals with impaired vision" with sufficiently interactive audio news content. *Id.* at 1:34–47, 1:66–2:15. The patent also emphasizes that subscribers can subscribe to particular content, noting that "[t]echniques are presented for generating one or more custom audio publication templates that are utilized by the customization & distribution system to generate one or more custom audio publications for each subscriber." *Id.* at 2:66–3:2.

The Complaint and claim chart only address a single claim of the '485 Patent, claim 26. Claim 26 recites:

1. A system for generating, customizing, distributing, and presenting an interactive audio publication to a user, comprising:

   at least one computer that includes

   > a subscriber portal configured to enable subscribers to generate custom audio publication templates used to generate one or more custom audio publications from one or more source audio publications, the custom audio publication templates including one or more custom sections, such that each custom section contains one or more audio content item assignment rules, the subscriber portal configured to enable a subscriber to generate a custom audio publication template used to generate an audio publication for the subscriber, the subscriber being a subscriber to the audio publication;

   a creation system configured to at least generate audio content items; and

   a customization and distribution system configured to generate one or more custom audio publications according to one or more user-defined custom audio publication templates, and configured to enable distribution of audio publications to user, the customization and distribution system configured to generate an audio publication for the subscriber based on the custom audio publication template, and to distribute the generated audio publication to the subscriber for interactive presentation, the distributed audio publication including the audio publication metadata and one or more audio content items;

   the subscriber portal configured to enable users to manage corresponding accounts and profile settings, and to enable users to access audio publications and audio content items.

'485 Patent at 54:27–59.

The Complaint only summarily alleges that Canva directly infringes and induces infringement of one or more claims "by making, using, offering to sell, selling and/or importing, without limitation, at least the Defendant products identified" as "Exemplary Defendant Products" in a claim chart attached as Exhibit 2 to the Complaint. Compl. ¶¶ 11, 15.

Cedar Lane's claim chart purports to show how Canva practices the elements of claim 26, but in fact wholly omits many limitations, including, but not limited to: an "interactive audio publication," a "distribution system" that "distribute[s] the generated audio publication to the subscriber for interactive presentation," "custom audio publication templates," "source audio publications," or a "subscriber portal" with the "subscriber being a subscriber to the audio publication." '485 Patent at 54:27–29, 54:31–42, 54:45–55.

Among the most glaring of these is Cedar Lane's failure to explain how Canva allegedly practices the limitation requiring "an interactive audio publication." *Id*. at 54:27–29. The Background section of the '485 Patent highlights "audio podcasts" and "customized audio news content" as **known and admitted prior art**. *Id*. at 1:22–25, 2:9–15 (emphasis added). But in support of its claim that Canva generates "interactive audio publication[s]," Cedar Lane alleges only that Canva "enabl[es] users to generate interactive audio publications (ads, podcasts, promotional videos, audiobooks)." Claim Chart at 2. Nowhere does it explain how the "ads, podcasts, promotional videos, [or] audiobooks" purportedly generated by Canva's text-to-speech feature are distinct from the "audio podcasts" and "customized audio news content" the Patent acknowledges as prior art.

The Claim Chart is similarly deficient in explaining how the generation of voiceovers constitutes the distribution of "audio publication[s] . . . for **interactive presentation**," Claim Chart at 17 (emphasis added); how the addition of text-to-speech audio to *existing* presentation

templates can constitute "custom audio publication templates," Claim Chart at 13; or how allegations that a user is a subscriber to *Canva* can show that the subscriber is a subscriber to an "audio publication," Claim Chart at 8, 21, 24.

To conserve the Court's and the parties' resources, including by avoiding unnecessary motion practice, Canva alerted Plaintiff's counsel of these serious defects in a letter dated August 5, 2025. Cedar Lane provided a cursory response on August 11, but did not provide any coherent explanations as to how the accused technology practices the identified limitations.

## III.    ARGUMENT

### A.    Cedar Lane has not plausibly alleged that Canva infringes its patent.

Cedar Lane's Complaint fails to state a claim for either direct or induced infringement.[3] *See* Compl. ¶¶ 11, 15. Specifically, the Complaint fails to adequately allege that Canva practices numerous elements of claim 26, including, but not limited to: an "interactive audio publication," a "distribution system" that "distribute[s] the generated audio publication to the subscriber for interactive presentation," "custom audio publication templates," "source audio publications," or a "subscriber portal" with the "subscriber being a subscriber to the audio publication." '485 Patent at 54:27–29, 54:31–42, 54:45–55.

#### 1.    Legal standards.

To plausibly state a claim for patent infringement, a plaintiff must do more than "reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am.,* 4 F.4th 1342, 1353 (Fed. Cir. 2021). "[T]o state a viable direct infringement claim, a plaintiff must plead facts that plausibly suggest that the accused product

---

[3] The '485 Patent also suffers from indefiniteness, including due to ambiguity in the terms "user" and "subscriber." Canva relies upon the interpretation most favorable to Cedar Lane solely for the purposes of this motion.

meets *each limitation* of the asserted claim or claims." *Shamoon v. City of San Antonio*, No. SA-18-CV-00718-XR, 2025 WL 1356399, at \*4 (W.D. Tex. Apr. 30, 2025) (quoting *Encoditech, LLC v. Citizen Watch Co. of Am., Inc*., No. SA-18-CV-1335-XR, 2019 WL 2601347, at \*3 (W.D. Tex. June 25, 2019)) (emphasis added); *Washington v. Caterpillar Inc*., No. 6:24-CV-00310-EG-DTG, 2025 WL 782305, at \*2 (W.D. Tex. Mar. 3, 2025) (dismissing direct infringement claim as "[n]owhere does Plaintiff demonstrate how a single product made, used, sold, offered for sale, or imported by Defendant contains every element of any claim of the '095 Patent"), *report and recommendation adopted sub nom. Washington v. Caterpillar, Inc*., No. WA:24-CV-00310-EG, 2025 WL 1091929 (W.D. Tex. Apr. 7, 2025); *see also Vervain, LLC v. Micron Tech., Inc.*, 6:21-cv-00487-ADA, 2022 WL 23469, at \*7 (W.D. Tex. Jan. 3, 2022) (noting "a claim chart or element-by-element mapping" is insufficient without factual allegations that "articulate why it is plausible that the accused product infringes the patent claim" (citation omitted)). At a minimum, the allegations must put Defendant "on notice of what specific conduct is alleged to constitute infringement." *Estech Sys., Inc. v. Regions Fin. Corp.*, No. 6:20-cv-00322-ADA, 2020 WL 6324321, at \*2 (W.D. Tex. Oct. 28, 2020) (citation omitted).

While the Complaint and Claim Chart fail to satisfy even this minimal standard, it is worth noting that when, as here, the accused technology involves software rather than simple physical devices, courts in this District have held that more detailed pleading is necessary. *See, e.g.*, *HourExchange, LLC v. Student Loan Benefits, Inc.*, No. 1:22-CV-00356-RP, 2023 WL 139150, at \*4 (W.D. Tex. Jan. 9, 2023); *LS Cloud Storage Techs., LLC v. Amazon.com, Inc.*, No. 1:22-CV-1167-RP, 2023 WL 2290291, at \*4 (W.D. Tex. Feb. 27, 2023); *Vervain*, 2022 WL 23469, at \*5. Such detail is required in particular with regards to the "claimed invention's point of novelty." *Vervain*, 2022 WL 23469 at \*5 ("In cases involving complex technology, a

7

complaint nakedly alleging that the accused product practices the claimed invention's point of novelty will rarely suffice.").

As to Cedar Lane's indirect infringement claim, "[i]ndirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement." *Hafeman v. LG Elecs. Inc*., No. 6:21-CV-00696-ADA-DTG, 2022 WL 3723304, at *4 (W.D. Tex. Aug. 28, 2022) (quoting *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004)).

### 2. The Complaint fails because it does not adequately allege that Canva practices each element of the asserted claim.

The Complaint fails to adequately allege that Canva practices numerous elements of claim 26, including, but not limited to: an "interactive audio publication," a "distribution system" that "distribute[s] the generated audio publication to the subscriber for interactive presentation," "custom audio publication templates," "source audio publications," or a "subscriber portal" with the "subscriber being a subscriber to the audio publication." '485 Patent at 54:27–29, 54:31–42, 54:45–55.

Right off the bat, Cedar Lane's claims necessarily fail because they wholly fail to allege that Canva's text-to-speech feature does anything more than the admitted prior art, much less that it creates "interactive audio publication[s]" as required by the '485 Patent. Per Cedar Lane's own allegations, Canva's feature allows users to "[c]hoose from a variety of voices in multiple accents to match your message, then add it to any Canva video, design, or presentation." Claim Chart at 4. Critically, Cedar Lane does not allege anything "interactive" about the output video, design, or presentation.  Rather, the accused capabilities of this feature are no different from those of ordinary "text-to-speech (TTS) technology to convert text-based content into audio," which, per the '485 Patent, ***is admitted prior art***. '485 Patent at 2:9–13; *see also* '485 Patent at

Fig. 2A (presenting "Text-to-Speech" as just one known component of the larger claimed system). Indeed, the '485 Patent specifically describes two known text-to-speech systems, stating: "BuzzVoice *uses computerized text-to-speech (TTS) technology* to convert text-based content into audio podcasts" and "the National Federation of the Blind provides telephone access to audio versions of newspapers *created using text-to-speech technology*." *Id*. at 2:9–13; 2:1–6 (emphases added).

Presumably to distinguish this prior art, claim 26 requires an "interactive audio publication." *Id*. at 54:27–29. The Background section of the '485 Patent makes clear that "audio podcasts" and even "customized audio news content" are also *known and admitted prior art*. *Id*. at 1:22–25, 2:9–15 (emphasis added). As such, the purported innovation here is the "combination of customization and *audio content interactivity*." *Id*. (emphasis added). Per the '485 Patent's Background section, this "interactivity" is intended to allow "busy multi-tasking individuals" to utilize such "interactive audio publication system[s]" "fully [and] effectively while driving, exercising, or otherwise multitasking," or to allow "the elderly and [] individuals with impaired vision" to access news. *Id.* at 1:26–33; 1:62–2:1. The specification is in accord, explaining that "[e]mbodiments of an interactive audio publication system . . . enable users to navigate quickly and easily through audio publications, scan story title and article headlines rapidly, and adjust the desired levels of presentation detail on-the-fly, without requiring any distracting physical intervention." *Id.* at 5:17–22.

But despite being described as the key "point[s] of novelty" by the patent, Cedar Lane makes no attempt to identify customization or audio content interactivity in the accused functionality. *Vervain*, 2022 WL 23469 at *5. Instead, it makes only the conclusory and unsupported assertion that Canva's text-to-speech feature "enabl[es] users to generate interactive

audio publications (ads, podcasts, promotional videos, audiobooks)." Claim Chart at 2. Nor does Cedar Lane explain how "ads, podcasts, promotional videos, [or] audiobooks" are any more interactive than the "audio podcasts" and "customized audio news content" acknowledged as prior art. Indeed, the sample output cited by Cedar Lane for this limitation is nothing more than an ordinary video with text-to-speech audio. Cedar Lane does not explain how such a video is any more "interactive" than the prior art.



**[Used Case]:** This use case demonstrates a subscriber using custom audio publication templates with different sections, each containing specific audio content item assignment rules (different voice tones per section) to generate a single audio publication.

*Id.* at 13.

Because Cedar Lane fails to adequately allege that the accused feature generates any "interactive audio publication[s]," it necessarily fails to allege a "distribution system" for such interactive audio publications as required by claim 26. '485 Patent at 54:45–55. The Claim Chart points only to the text-to-speech feature's alleged ability to generate voiceovers, but it does not adequately allege how this feature contains a "distribution system" that "distribute[s] the generated audio publication to the subscriber for interactive presentation," as required by the plain language of claim 26. *Id.*

Cedar Lane similarly fails to allege that Canva practices numerous other elements of claim 26. For example, Claim 26 specifically requires that the "custom audio publication templates" contain "custom sections, such that each custom section contains one or more audio content item assignment rules." *Id*. at 54:32–42. But the Claim Chart does not allege any "custom sections" or "rules." Indeed, while claim 26 requires that Canva "enable subscribers to generate custom audio publication templates," all the Claim Chart alleges is that Canva may provide existing presentation templates to which a user can add text-to-speech audio. *See, e.g.*, Claim Chart at 12. Nowhere in the Claim Chart does Cedar Lane provide any support for any allegation that users can use the accused feature to generate *any* templates, let alone an audio publication template with custom sections or assignment rules.

Moreover, nowhere does Cedar Lane identify how content generated by the text-to-speech feature could be used as a template to create ***other*** publications. Nor does the Claim Chart explain what it is accusing as a "section" that could contain "rules." While the Claim Chart identifies "different voice tones per section" as "assignment rules," *id.* at 13, it fails to identify any "rules" involved with the selection of different voice tones or explain how the selection of a voice tone could itself constitute a "rule." As such, Cedar Lane fails to adequately allege any "custom audio publication templates" within the meaning of claim 26.

Cedar Lane similarly fails to identify any "source audio publications" used to generate any "custom audio publications" as required by Claim 26. '485 Patent at 34. Cedar Lane states only that "[t]he system applies . . . rules to source audio." Claim Chart at 17. Not only does this assertion simply parrot the claim limitation, it doesn't even recite it in full: Cedar Lane pointedly does not allege that Canva draws upon any "source audio ***publications***." If anything, the Claim Chart suggests that Canva users can generate audio from text, *not* from "source audio

publications." *See id*. Cedar Lane thus not only fails to allege any "custom audio publication templates," it further fails to allege that such templates can be used to generate "custom audio publications from one or more source audio publications."

In addition, Cedar Lane does not adequately allege the existence of a "subscriber portal configured to enable subscribers to generate custom audio publication templates used to generate one or more custom audio publications." '485 Patent at 54:31–42. As previously explained, per Cedar Lane's own allegations, Canva does not allow users to "generate custom audio publication templates"—it only allegedly allows users to generate voiceovers based on a set of preexisting audio options. *See, e.g.*, Claim Chart at 16 (showing the user selecting a language and voice for the desired voiceover). Likewise, Canva does not enable a "subscriber portal" with the "subscriber being a subscriber ***to the audio publication***." '485 Patent at 54:31–42. (emphasis added). Nowhere in the Claim Chart does Cedar Lane purport to identify any "subscriber" to any "audio publication." Instead, the Claim Chart merely identifies the ability to subscribe ***to Canva***. Claim Chart at 8, 21, 24. Cedar Lane does not, and cannot, allege that Canva itself is an "audio publication."

For all of these reasons, Cedar Lane's allegations are insufficient to give rise to a plausible inference that Canva practices claim 26. As such, Cedar Lane's claims must be dismissed.

## B.  The asserted claim is invalid under 35 U.S.C. § 101.

Cedar Lane's Complaint should also be dismissed because the asserted claim is directed towards an abstract idea and thus is invalid under 35 U.S.C. § 101. At step 1, asserted claim 26 is directed to taking a collection of source audio and putting it into different sequences, akin to what studios, for example, have done since the beginning of recorded audio. At step 2, the claim does not contain an "inventive concept . . . sufficient to ensure that the patent in practice amounts

to significantly more than a patent upon the ineligible concept itself." *See Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014) (cleaned up).

### 1. Abstract ideas cannot be patented.

Under section 101 of the Patent Act, "laws of nature, natural phenomena, and abstract ideas" are patent ineligible. 35 U.S.C. § 101; *Alice,* 573 U.S. at 216. Determining whether patent claims are invalid under section 101 requires a two-step inquiry. *Alice*, 573 U.S. at 216. At step one, a court determines "whether the claims at issue are directed to" an abstract idea. *Id.* at 217 (citation omitted). If so, then at step two, the court evaluates whether there exists "an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217–18 (cleaned up).

Patentability under 35 U.S.C. § 101 is a threshold legal issue that may be appropriate for resolution at the pleadings stage. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). Indeed, courts routinely address section 101 challenges on the pleadings. *See, e.g.*, *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 702 (Fed. Cir. 2023); *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020); *PerformancePartners, LLC v. FlashParking, Inc.*, 697 F. Supp. 3d 678, 685 (W.D. Tex. Oct. 11, 2023). Any claim construction disputes need only be resolved "to whatever extent is needed to conduct the § 101 analysis." *Aatrix*, 882 F.3d at 1125 (citation omitted). Thus, for example, where a patentee offers no proposed construction of any term that would preclude dismissal, patent ineligibility can be decided on a motion to dismiss. *Clev. Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017).

### 2. *Alice* step one: the asserted claim is directed to an abstract

idea.

At step one of the *Alice* test, courts look at the focus of the claims to determine their "character as a whole." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (citation omitted). Typically, the step-one analysis for computer-related inventions requires the Court to "ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea." *Sanderling*, 65 F.4th at 703 (quoting *Enfish, LLC v. Microsoft Corp*., 822 F.3d 1327, 1335 (Fed. Cir. 2016)). "Claims . . . that are directed to longstanding commercial practices do not pass step one of the two-part § 101 test." *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1181–82 (Fed. Cir. 2020); *see also cxLoyalty, Inc. v. Maritz Holdings Inc*., 986 F.3d 1367, 1376–77 (Fed. Cir. 2021) (claim directed to "facilitat[ing] . . . transaction[s] via transfers of information between the participant, vendor system, and the intermediary" is ineligible).

Here, the core of Claim 26 involves nothing more than the abstract concept of customizing and distributing information. The claim generally recites (1) creating audio publication templates; (2) assigning audio content items based on some set of rules, which is a general organizational principle; (3) generating and distributing a custom, interactive audio publication, *i.e.* compiling and sharing personalized content; and (4) managing accounts and profile settings, which are conventional functions for online services. Taken together, these elements describe a long-standing practice of tailoring information for individual recipients, whether it be a curated collection of print articles or a collection of selected songs. For example, a staffer for a government official might follow a standard set of rules to assemble a packet of news information, covering a certain set of issues or regions. The reader interacts with the compiled information by flipping through the pages and consuming it according to interest and available time. Or a person might make mixtapes for listening to while she exercises, always

starting with slower songs, then increasing the tempo, and finally slowing back down again. That runner may later interact with the tape by fast forwarding or rewinding per her preferences. Claim 26 does not disclose improvements to computer functionality, but rather simply claims these routine tasks in the context of "audio publications."

Accordingly, claim 26 is directed to an abstract idea and the analysis should proceed to *Alice* step two.

### 3. *Alice* step two: claim 26 lacks an inventive concept.

At step two, the question is whether the elements of claim 26, either individually or in combination, contain an inventive concept sufficient to "'transform' the claimed abstract idea into a patent-eligible application" of the idea. *Alice*, 573 U.S. at 217, 221 (citation omitted). An element or combination of elements must add "significantly more" beyond the abstract idea itself. *Id.* at 222 (citation omitted). Further, the inventive concept must be evident in the claims themselves "as opposed to something purportedly described in the specification." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017) (citation omitted).

"To salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not." *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012). A patentee cannot simply invoke "already-available computers;" "[r]ather, the components must involve more than performance of well-understood, routine, conventional activities previously known to the industry." *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (cleaned up); *see also Elec. Power Grp.*, 830 F.3d at 1355 (claims using generic "off-the-shelf" technology do not provide an inventive concept). Further, the claims must specifically describe "how those [computing] components provide a

concrete solution to the problem addressed by the patent." *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016).

Here, the claim at issue merely uses "off-the-shelf, conventional computer, network, and display technology" that is "not even arguably inventive." *Elec. Power Grp.*, 830 F.3d at 1355 (cleaned up). Indeed, the elements of claim 26 do not specify *any* technological implementation and refer only to generic features such as "computer[s], "audio publications," "creation" and "customization and distribution system[s]," and "subscriber portal[s]." '485 Patent at 54:27–59. Reciting such conventional and widely used features does not "add an inventive concept sufficient to bring the abstract idea into the realm of patentability." *In re TLI Commc'ns*, 823 F.3d at 613 (finding "claims' recitation of a 'telephone unit,' a 'server,' an 'image analysis unit,' and a 'control unit'" insufficient); *see also PerformancePartners*, 697 F. Supp. 3d at 688 (finding patent failed step two where it did "not claim new technologies that could be used . . . but rather relies on generic technology"). Nor is there any language in claim 26 suggesting that such conventional components behave other than "as expected according to their ordinary use." *See In re TLI Commc'ns*, 823 F.3d at 615. Instead, the claim includes vague functional terms such as "generat[ing]," "configur[ing]," and "access[ing]." '485 Patent at 54:27–59. Such terms are insufficient to disclose the requisite inventive concept. *See In re TLI Commc'ns*, 823 F.3d at 615.

Although the specification cannot supply an inventive concept—the concept must be evident in the claim itself—it is worth noting the specification is likewise devoid of any specific technical requirements and indeed is expressly technology-agnostic. *See Two-Way Media*, 874 F.3d at 1338. The specification states, for instance:

> In embodiments, interactive audio publication system 100 may feature numerous implementation and deployment options. Interactive audio publication system 100

> may be implemented in hardware, software, firmware, or any combination
> thereof. For instance, in an example embodiment, creation system 102,
> customization & distribution system 110, and subscriber portal 124 may each
> include one or more software applications that are deployed on a single computer
> or on a plurality of computers with access to various enterprise resources (e.g.,
> databases 118, 120, and 122, software modules, etc.).

'485 Patent at 5:32–42. This is just a list of generically available technology, such as software and computers. Indeed, the specification includes many broad references to existing technology, including but not limited to:

- Explaining that a "presentation device may be implemented as a standalone hardware device (e.g., a laptop computer, a notebook computer, a smart phone, a handheld computer, a custom hardware device, etc.), an attachable device (e.g., a plug-in device), a software application targeted for a PMP, a smart phone, or other computing platform, or other suitable device *mentioned elsewhere herein or otherwise known*." *Id.* at 6:3–10 (emphasis added).

- Defining "visual content items" as "include[ing] image files (e.g., JPEG, PNG, etc.) and video files (e.g., MPEG, AVI, Flash, etc.)." *Id.* at 7:45–47.

- Explaining that a "text-to-speech module may include one or more of human voice talent, computerized text-to-speech (TTS) (e.g., a text-to-speech application), or a combination of both to perform text-to-speech conversion." *Id.* at 9:28–32.

- Noting that "[a]udio publication assembly directives may include SQL (structured query language) statements and/or other code." *Id.* at 15:23–27.

In short, the patent repeatedly invokes only generic, "readily available" and existing computing components and makes no attempt to disclose new technology. This claim is thus "'insufficient to pass the test of an inventive concept in the application' of an abstract idea." *Elec. Power Grp.*, 830 F.3d at 1355 (citation omitted); *see also PerformancePartners, LLC*, 697

F. Supp. 3d at 689 (noting that the "use of generic, conventional technology to administer a method of organizing human activity is an inherently abstract idea").

Accordingly, the asserted patent fails both *Alice* steps, rendering it invalid.

**C.    Leave to amend should be denied.**

Canva respectfully submits that Cedar Lane should not be granted leave to amend because amendment would be futile. *See Ballard v. Devon Energy Prod. Co.*, 678 F.3d 360, 364 (5th Cir. 2012). First, Cedar Lane cannot plausibly allege that Canva meets each element of the asserted claim because the accused Canva product does not do what claim 26 requires. *See supra* Part III.A.2. Indeed, Cedar Lane's claim chart shows it has accessed Canva's products (which are publicly accessible), and it simply cannot plausibly allege that Canva practices numerous elements of claim 26, as detailed above. Second, Cedar Lane cannot amend around the lack of patentable subject matter of the asserted claims. *Network Architecture Innovations LLC v. CC Network Inc.*, No. 2:16-CV-00914-JRG, 2017 WL 1398276, at *7 (E.D. Tex. Apr. 18, 2017) (dismissing complaint with prejudice because patent was invalid under § 101).

**D.    Canva intends to seek all available relief from Cedar Lane and its counsel.**

Further, this is just one of many spurious patent assertions Plaintiff's counsel has brought against Canva. In *Gamehancement LLC v. Canva US, Inc.*, No. 6:23-cv-00840-KC (W.D. Tex. filed Dec. 8, 2023), for instance, plaintiff's counsel filed a patent infringement lawsuit against Canva without even attempting to show how Canva met an essential limitation of the patent, and then voluntarily dismissed the case without prejudice just before Canva was to file a motion to dismiss. Order Granting Voluntary Dismissal Without Prejudice, *Gamehancement LLC v. Canva US, Inc.*, No. 6:23-cv-00840-KC (W.D. Tex., Feb. 16, 2024), ECF No. 16. Within the past eight months alone, plaintiff's counsel has filed two more patent infringement lawsuits against Canva, each similarly untethered to the actual functionality of Canva's products. *See HyperQuery LLC*

*v. Canva US, Inc.*, No. 7:25-cv-00055-DC-DTG (W.D. Tex. filed Feb. 6, 2025); *Cascade Systems LLC v. Canva US, Inc.*, No. 7:25-cv-00217-DC-DTG (W.D. Tex. filed May 7, 2025). Canva believes each of these cases is sanctionable under Rule 11, 28 U.S.C. § 1927, and the Court's inherent authority, and that each case is exceptional, warranting an award of fees and costs under 35 U.S.C. § 285. Canva reserves the right to seek appropriate relief to address the harassing conduct of plaintiff's counsel and his clients.

## IV.    CONCLUSION

For the foregoing reasons, Canva respectfully requests that the Court dismiss the Complaint with prejudice pursuant to Rule 12(b)(6).

Respectfully submitted,

JACKSON WALKER LLP

Dated:  September 15, 2025

By:    */s/ Nathaniel St.Clair, II*
        Nathaniel St. Clair, II (SBN 24071564)
        nstclair@jw.com
        2323 Ross Avenue, Suite 600
        Dallas, TX 75201
        Tel: (214) 953-6000

        Asim M. Bhansali (SBN 90001290))
        abhansali@kblfirm.com
        Kate E. Lazarus (*pro hac vice*)
        klazarus@kblfirm.com
        Amy T. Le (*pro hac vice*)
        ale@kblfirm.com
        KWUN BHANSALI LAZARUS LLP
        555 Montgomery Street, Suite 750
        San Francisco, CA  94111
        Tel:  (415) 630-2350

        Attorneys for Defendant
        CANVA US, INC.

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Ruel CV-5, the undersigned hereby certifies that, on September 15, 2025, all counsel of record who have appeared in this case were served with a copy of the foregoing document via the Court's CM/ECF system.

                        */s/ Nathaniel St. Clair, II*
                         Nathaniel St. Clair, II