IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| **Cedar Lane Technologies Inc.,** | Case No. 7:25-cv-271 |
| Plaintiff, | Patent Case |
| v. | Jury Trial Demanded |
| **Canva US, Inc.,** | |
| Defendant. | |

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

1. Plaintiff Cedar Lane Technologies Inc. ("Plaintiff"), through its attorneys, complains of Canva US, Inc. ("Defendant"), and alleges the following:

**PARTIES**

2. Plaintiff Cedar Lane Technologies Inc. is a corporation organized and existing under the laws of Canada that maintains its principal place of business at 560 Baker Street, Suite 1, Nelson, BC V1L 4H9.

3. Defendant Canva US, Inc. is a corporation organized and existing under the laws of Delaware that maintains an established place of business at 200 E 6th St, Austin, TX 78701.

**JURISDICTION**

4. This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

5. This Court has exclusive subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has personal jurisdiction over Defendant because it has engaged in systematic and continuous business activities in this District. As described below, Defendant has committed acts of patent infringement giving rise to this action within this District.

## VENUE

7. Venue is proper in this District under 28 U.S.C. § 1400(b) because Defendant has an established place of business in this District. In addition, Defendant has committed acts of patent infringement in this District, and Plaintiff has suffered harm in this district.

## PATENT-IN-SUIT

8. Plaintiff is the assignee of all right, title and interest in United States Patent No. 8,438,485 (the "Patent-in-Suit"); including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the Patent-in-Suit. Accordingly, Plaintiff possesses the exclusive right and standing to prosecute the present action for infringement of the Patent-in-Suit by Defendant.

## THE '485 PATENT

9. The '485 Patent is entitled "System, method, and apparatus for generating, customizing, distributing, and presenting an interactive audio publication ," and issued 2013-03-07. The application leading to the '485 Patent was filed on 2010-03-17. A true and correct copy of the '485 Patent is attached hereto as Exhibit 1 and incorporated herein by reference.

10. Prior to the invention of the '485 Patent, conventional systems and methods for consuming audio news content suffered from significant technological deficiencies that prevented users from efficiently accessing personalized audio content and interacting with it while multitasking. While visually-oriented online news content offerings were "vast, varied, and dynamic, they do not provide busy multitasking individuals with convenient news consumption

opportunities." '485 Patent, 1:26-29. Online newspapers and news magazines could not "be utilized fully or effectively while driving, exercising, or otherwise multitasking" due to their "visual and 'page-based' nature." *Id.*, 1:30-33.

11. The prior art lacked technological capability for meaningful personalization and customization of audio content. Companies like "BuzzVoice and Stitcher currently allow users to customize audio news content for playback," with BuzzVoice using "computerized text-to-speech (TTS) technology to convert text-based content into audio podcasts, while Stitcher allows users to create a playlist of selected audio podcasts." '485 Patent 2:7-15. However, "neither provides a combination of customization and audio content interactivity." *Id.*, 2:15. These prior art systems required manual playlist creation and provided no automated, rule-based system for intelligently selecting and organizing audio content according to user interests.

12. Additionally, prior art systems lacked the technical capability to generate structured audio content items with metadata enabling interactive presentation. Audio content ranged from "traditional broadcast radio news programs to prerecorded audio podcasts," but with broadcast radio, "an individual's interactivity is limited to changing the channel," and with podcasts, users remained "limited to the standard navigation functions (e.g., next/previous track, seek forward/backward, etc.) provided by a media player." '485 Patent, 1:40-45. Even enhanced technologies like Apple's "enhanced podcasts" that "combine traditional audio podcasts with embedded chapter information" still required users to "fumble with media player controls and menus to navigate through enhanced audio content." *Id.*, 1:57-60. There was no prior art system that combined automated content customization with structured metadata enabling true interactive presentation.

13. The '485 Patent addressed these technological deficiencies through the inventive system of Claim 26, which integrates three interconnected computer subsystems to provide automated, rule-based customization and generation of interactive audio publications. Claim 26 recites "a system for generating, customizing, distributing, and presenting an interactive audio publication to a user, comprising: at least one computer that includes a subscriber portal...a creation system...and a customization and distribution system." This integrated architecture represents a departure from prior art systems that merely converted text to audio or created simple playlists.

14. A key inventive concept captured in Claim 26 is the subscriber portal's enablement of automated, rule-based content customization through custom audio publication templates. Claim 26 specifically recites "a subscriber portal configured to enable subscribers to generate custom audio publication templates used to generate one or more custom audio publications from one or more source audio publications, the custom audio publication templates including one or more custom sections, such that each custom section contains one or more audio content item assignment rules." This limitation embodies the inventive concept of moving defining organizational rules that the computer system executes to assemble personalized audio publications. The specification explains that these "audio content item assignment rules" can include "static selection & assignment rules," "keyword search-based assignment rules," and "relevance-based" selection that automatically identifies content matching user interests. '485 Patent, 17:5-35. This rule-based approach solves the prior art deficiency where systems like Stitcher only allowed "users to create a playlist of selected audio podcasts," requiring manual selection rather than automated, intelligent assembly. *Id.*, 2:11-12.

15. Another inventive concept captured in Claim 26 is the creation system's generation of audio content items with the necessary structure to enable the interactive presentation that prior art systems lacked. Claim 26 recites "a creation system configured to at least generate audio content items," where these audio content items are later distributed as part of "the distributed audio publication including the audio publication metadata and one or more audio content items" for "interactive presentation." The specification explains that generated audio content items include "digital audio data corresponding to a spoken representation of the text-based content item or speech-based content item, and audio content item metadata indicating a structure of the included digital audio data." *Id.*, Abstract. This metadata includes "a plurality of markers designating boundaries" that enable dynamic, interactive navigation, such as "a plurality of time-based boundary markers (e.g., an audio recording timestamp referenced from the beginning of the audio recording, etc.)." *Id.*, 7:24-24. By generating audio content items with structured metadata, the creation system enables the "interactive presentation" recited in Claim 26, addressing the prior art deficiency where users were "limited to the standard navigation functions...provided by a media player" and had to "fumble with media player controls." *Id.*, 1:42-43.

16. A further inventive concept captured in Claim 26 is the customization and distribution system's automated generation of custom audio publications according to user-defined templates and distribution of these publications with the metadata necessary for interactive presentation. Claim 26 recites "a customization and distribution system configured to generate one or more custom audio publications according to one or more user-defined custom audio publication templates, and configured to enable distribution of audio publications to user, the customization and distribution system configured to generate an audio publication for the

subscriber based on the custom audio publication template, and to distribute the generated audio publication to the subscriber for interactive presentation, the distributed audio publication including the audio publication metadata and one or more audio content items." This limitation captures the inventive concept of an integrated system that both executes the subscriber-defined rules to assemble personalized content and distributes complete audio publications with "audio publication metadata" that defines the structure enabling interactive presentation. The specification explains that "audio publication metadata defines an ordered list of sections contained within an audio publication and provides association details that map one or more audio content items to one or more sections." '485 Patent, 8:10-14. This automated assembly and distribution with structured metadata addresses the prior art's inability to provide both customization and interactivity, solving the deficiency where prior art systems like BuzzVoice and Stitcher offered one or the other but "neither provides a combination of customization and audio content interactivity." *Id.*, 2:14-15.

17.     An additional inventive concept captured in Claim 26 is the subscriber portal's integrated management of accounts, profiles, and content access that enables the personalized, rule-based customization system. Claim 26 recites "the subscriber portal configured to enable users to manage corresponding accounts and profile settings, and to enable users to access audio publications and audio content items." This limitation embodies the concept of a centralized system that maintains user preferences, subscriptions, and access rights necessary for the automated customization system to function. The specification explains that the subscriber portal stores "subscriber details including current subscription information, audio content item presentation history, advertisement presentation history, and/or one or more custom audio publication templates" in a subscriber database. '485 Patent, 15:63-67. This centralized

management enables the customization and distribution system to automatically generate personalized audio publications according to each subscriber's defined templates and access privileges, addressing the prior art's lack of integrated customization and delivery infrastructure.

      18.     The inventive concepts embodied in Claim 26's "subscriber portal configured to enable subscribers to generate custom audio publication templates...including one or more custom sections, such that each custom section contains one or more audio content item assignment rules" directly address the prior art's technological deficiency of requiring manual content selection and playlist creation. By enabling subscribers to define rules rather than manually select content, the claimed subscriber portal shifts the burden of content organization from the user to the computer system. The specification explains that these rules can automatically "select audio content items from source audio publications according to a provided keyword search expression" or "select new audio content items from source audio publications based on relevance to previously 'tracked' audio content items." '485 Patent 18:23-26. This enabled the system to surpass the prior art which only "allow[ed] users to create a playlist of selected audio podcasts," requiring manual, time-consuming selection rather than automated, intelligent assembly. *Id.*, 2:12.

      19.     The inventive concept embodied in Claim 26's "creation system configured to at least generate audio content items" that are distributed with "audio publication metadata" for "interactive presentation" addresses the prior art's inability to provide structured, navigable audio content. The creation system generates audio content items with metadata that includes boundary markers and structural information, enabling the interactive presentation that prior art podcasts lacked. This solves the technical problem where prior art users were "limited to the standard navigation functions (e.g., next/previous track, seek forward/backward, etc.) provided by a media

player" and had to "fumble with media player controls and menus to navigate through enhanced audio content." '485 Patent, 1:42-42; 1:58. The structured metadata generated by the creation system and included in the distributed audio publication enables users to interact with audio content in ways not possible with conventional audio files.

20. The inventive concept embodied in Claim 26's "customization and distribution system configured to generate one or more custom audio publications according to one or more user-defined custom audio publication templates" addresses the prior art's lack of an integrated system providing both automated customization and interactive content delivery. The customization and distribution system executes the assignment rules defined in the subscriber's templates, automatically selecting and organizing content from "one or more source audio publications" into personalized "custom audio publications" with proper "audio publication metadata." This integrated approach solves the prior art deficiency where systems like BuzzVoice provided content conversion but no customization, while Stitcher provided playlist creation but no true interactivity, and "neither provides a combination of customization and audio content interactivity." '485 Patent, 2:14-15.

21. The inventive concepts of Claim 26 improve computer functionality by enabling computers to automatically assemble personalized audio publications through rule-based processing rather than requiring manual content selection. The subscriber portal's enablement of "custom audio publication templates...such that each custom section contains one or more audio content item assignment rules" allows the computer to execute sophisticated content filtering, searching, and organizational tasks automatically. The specification explains that these rules can include "keyword search-based selection" where a "search engine 576 selects audio content items 572 that match the keyword search expression provided in keyword search-based

assignment rule 574," and "relevance-based selection" where "relevance analysis module 590 analyzes audio content items 586 for relevance to previously 'tracked' audio content items 588, possibly by using a relevance search engine 592." '485 Patent, 18:23-26. This automated, intelligent content selection reduces the computational burden on users and enables more efficient use of computing resources compared to prior art systems requiring manual playlist creation.

22. Claim 26's integration of the creation system that generates structured audio content items with the customization and distribution system that distributes them "for interactive presentation" with "audio publication metadata" improves computer functionality by enabling computers to present audio content dynamically and interactively. The audio publication metadata "defines an ordered list of sections contained within an audio publication and provides association details that map one or more audio content items to one or more sections," and the audio content item metadata includes "boundary markers" that enable navigation within individual items. '485 Patent, 8:10-14; 10:20-28. This structured metadata architecture enables presentation systems to provide interactive navigation functionality that prior art media players could not achieve, as prior art users were "limited to the standard navigation functions (e.g., next/previous track, seek forward/backward, etc.) provided by a media player." *Id.*, 1:42-43.

23. The claimed system improves network and storage efficiency through the customization and distribution system's ability to generate personalized audio publications containing only relevant content based on subscriber-defined rules. By executing assignment rules to select specific audio content items from "one or more source audio publications," the system distributes only content matching user interests rather than requiring transmission of

9

complete, unfiltered audio publications. This reduces unnecessary network bandwidth consumption and storage requirements compared to prior art systems that would require users to download complete audio publications or manually filter through unwanted content.

24. An additional key inventive concept captured in Claim 26 is the subscriber portal's enablement of rule-based content customization through custom audio publication templates with sectional assignment rules. Claim 26 specifically recites "the custom audio publication templates including one or more custom sections, such that each custom section contains one or more audio content item assignment rules." This limitation embodies the inventive concept of a structured, hierarchical data architecture that enables automated, multi-criteria content selection and organization. Prior art systems like Stitcher merely allowed "users to create a playlist of selected audio podcasts," requiring manual, item-by-item selection without any rule-based framework for automated content assembly. '485 Patent, 2:11-12. The claimed template structure with sectional assignment rules enables the computer system to automatically execute complex content curation across multiple organizational dimensions simultaneously. As the specification explains, assignment rules can include "static selection & assignment rules" that "explicitly map one or more audio content items" to sections, "keyword search-based assignment rules" where "a search engine 576 selects audio content items 572 that match the keyword search expression," and "relevance-based selection" where "relevance analysis module 590 analyzes audio content items 586 for relevance to previously 'tracked' audio content items 588." '485 Patent, 17:11-39; 18:26-39. This multi-layered rule architecture improves computer functionality by enabling the computer to perform sophisticated content filtering, searching, and organization operations automatically according to hierarchically-organized criteria, rather than merely storing a flat list of user-selected items as in prior art playlist systems. The sectional organization

with per-section assignment rules allows different selection methodologies to be applied to different portions of the audio publication simultaneously, creating a technically superior content assembly system that reduces processing overhead by organizing rules hierarchically and enables more efficient content matching and retrieval operations.

25. None of the methods or systems of Claim 26 were previously performed by human beings, or capable of being performed in the human mind, as they necessarily involve computer systems automatically executing assignment rules to select and organize audio content items from multiple source audio publications, generating complex metadata structures defining audio publication hierarchies and audio content item boundaries, maintaining subscriber databases with profiles and preferences, and enabling real-time interactive presentation through structured metadata—all of which require specialized computer processing and cannot be performed mentally or manually.

## COUNT 1: INFRINGEMENT OF THE '485 PATENT

26. Plaintiff incorporates the above paragraphs herein by reference.

27. **Direct Infringement**. Defendant has been and continues to directly infringe one or more claims of the '485 Patent in at least this District by making, using, offering to sell, selling and/or importing, without limitation, at least the Defendant products identified in the charts incorporated into this Count below (among the "Exemplary Defendant Products") that infringe at least the exemplary claims of the '485 Patent also identified in the charts incorporated into this Count below (the "Exemplary '485 Patent Claims") literally or by the doctrine of equivalents. On information and belief, numerous other devices that infringe the claims of the '485 Patent have been made, used, sold, imported, and offered for sale by Defendant and/or its customers.

28. Defendant also has and continues to directly infringe, literally or under the doctrine of equivalents, the Exemplary '485 Patent Claims, by having its employees internally test and use these Exemplary Products.

29. **Actual Knowledge of Infringement**. The service of this Complaint, in conjunction with the attached claim charts and references cited, constitutes actual knowledge of infringement as alleged here.

30. Despite such actual knowledge, Defendant continues to make, use, test, sell, offer for sale, market, and/or import into the United States, products that infringe the '485 Patent. On information and belief, Defendant has also continued to sell the Exemplary Defendant Products and distribute product literature and website materials inducing end users and others to use its products in the customary and intended manner that infringes the '485 Patent. See Exhibit 2 (extensively referencing these materials to demonstrate how they direct end users to commit patent infringement).

31. **Induced Infringement**. At least since being served by this Complaint and corresponding claim charts, Defendant has actively, knowingly, and intentionally continued to induce infringement of the '485 Patent, literally or by the doctrine of equivalents, by selling Exemplary Defendant Products to their customers for use in end-user products in a manner that infringes one or more claims of the '485 Patent.

32. Exhibit 2 includes charts comparing the Exemplary '485 Patent Claims to the Exemplary Defendant Products. As set forth in these charts, the Exemplary Defendant Products practice the technology claimed by the '485 Patent. Accordingly, the Exemplary Defendant Products incorporated in these charts satisfy all elements of the Exemplary '485 Patent Claims.

33. Plaintiff therefore incorporates by reference in its allegations herein the claim charts of Exhibit 2.

34. Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement.

## JURY DEMAND

35. Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A. A judgment that the '485 Patent is valid and enforceable

B. A judgment that Defendant has infringed directly and indirectly one or more claims of the '485 Patent;

C. An accounting of all damages not presented at trial;

D. A judgment that awards Plaintiff all appropriate damages under 35 U.S.C. § 284 for Defendant's continuing or future infringement, up until the date such judgment is entered with respect to the '485 Patent, including pre- or post-judgment interest, costs, and disbursements as justified under 35 U.S.C. § 284;

E. And, if necessary, to adequately compensate Plaintiff for Defendant's infringement, an accounting:

   i. that this case be declared exceptional within the meaning of 35 U.S.C. § 285 and that Plaintiff be awarded its reasonable attorneys fees against Defendant that it incurs in prosecuting this action;

    ii.    that Plaintiff be awarded costs, and expenses that it incurs in prosecuting this action; and

    iii.    that Plaintiff be awarded such further relief at law or in equity as the Court deems just and proper.

Dated: October 6, 2025

Respectfully submitted,

/s/ Isaac Rabicoff
Isaac Rabicoff
Rabicoff Law LLC
4311 N Ravenswood Ave Suite 315
Chicago, IL 60613
7736694590
isaac@rabilaw.com

**Counsel for Plaintiff**
**Cedar Lane Technologies Inc.**

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system for the Western District of Texas and that ECF system will send a Notice of Electronic Filing to the CM/ECF participants in this case on this 6th day of October, 2025.

/s/ Isaac Rabicoff
Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
4311 N Ravenswood Ave Suite 315
Chicago, IL 60613
773.669.4590
isaac@rabilaw.com


**Counsel for Plaintiff**
**Cedar Lane Technologies, Inc.**